**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| Anonymous Media Research Holdings, LLC, | |
| Plaintiff, | |
| v. | **Case No. 1:23-cv-01143-DII** |
| Roku, Inc., | Jury Trial Demanded |
| Defendant. | |

**DEFENDANT'S MOTION TO TRANSFER VENUE
UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 1

III.  LEGAL STANDARD............................................................................ 3

IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE
      CONVENIENT VENUE ....................................................................... 4

      A.    This case could have, and should have, been filed in NDCA. ........................... 5

      B.    The private interest factors overwhelmingly favor transfer............................ 5

            1.    Relative ease of access to sources of proof weighs in favor of
                  transfer. ........................................................................... 5

            2.    Availability of compulsory process favors transfer. ............................. 7

            3.    The cost of attendance for willing witnesses strongly favors
                  transfer. ........................................................................... 9

            4.    Other practical problems favor transfer. ......................................... 12

      C.    The public interest factors also favor transfer.................................... 12

            1.    Local interest strongly favors transfer. ......................................... 12

            2.    Familiarity with governing law and conflicts of law is neutral. ........... 14

            3.    Administrative difficulties slightly favor transfer................................ 14

V.    CONCLUSION................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*DataQuill, Ltd. v. Apple Inc.*,
  No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...................................14

*Flick v. Wyeth LLC*,
  No. 6:10CV658, 2012 WL 13008725 (E.D. Tex. Jan. 19, 2012) ...........................................12

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) ...................................................................................14, 15

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)........................................................................................ passim

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)......................................................................................6, 7, 9, 15

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) ..............................................................................................15

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...........................................7, 13

*In re Nintendo Co. Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)...........................................................................................4, 6

*In re Nitro Fluids L.L.C.*,
  978 F.3d 1308 (Fed. Cir. 2020)..............................................................................................14

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ....................................................................................................5

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...............................................................................................5, 6

*In re Samsung Elecs. Co., Ltd.*,
  No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023).................................................10

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) .......................................................................................... passim

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)..........................................................................................9, 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011)................................................................................4

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...................................................................... passim

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................................3

*Jones v. Angelo State Univ.*,
  No. A-09-CA-652-SS, 2009 WL 10699928 (W.D. Tex. Oct. 19, 2009)................................12

*Media Chain, LLC v. Roku, Inc.*,
  No. 1:21-CV-27-LY, 2021 WL 5994809 (W.D. Tex. Dec. 7, 2021) ............................ passim

*Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd*.,
  No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) ...............................14

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 6:19-cv-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) .........................4, 5, 7, 12

*Promote Innovation LLC v. Schering Corp*.,
  No. 2:10-CV-248-TJW, 2011 WL 665817 (E.D. Tex. Feb. 14, 2011)...................................13

*Wet Sounds, Inc. v. Audio Formz, LLC*,
  No. A-17-CV-141-LY, 2017 WL 4547916, (W.D. Tex. Oct. 11, 2017), *rep. &
  rec. adopted*, No. 1:17-CV-141- LY, 2018 WL 1219248 (W.D. Tex. Jan. 22,
  2018) ..............................................................................................................5

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  No. 2:10-cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ...................................13

*Yeti Coolers, LLC v. Love Deals Inc.*,
  No. 1:23-CV-79-RP, 2023 WL 4754479 (W.D. Tex. July 24, 2023).....................................15

**STATUTES**

28 U.S.C. § 1404(a) .................................................................................................3, 4, 9

**RULES**

Fed. R. Civ. R. 45(c)(1)(A).............................................................................................8

Fed. R. Civ. R. 45(c)(1)(B).............................................................................................8

## I.    INTRODUCTION

For the convenience of the parties and witnesses, this case should be transferred to the Northern District of California.   In this case, Plaintiff accuses Roku's automatic content recognition technology of infringing six patents.   The Roku witnesses knowledgeable about the accused technology are located in two places: (1) San Jose, CA where Roku is headquartered, and (2) Seoul, Korea.   With respect to the Korean witnesses, the Fifth Circuit recently held it is "indisputable" that Northern California "is clearly more convenient" than this District for witnesses located in Asia.   Although Roku has an Austin office, this case has nothing to do with the work done there.   Indeed, Roku is not aware of a single employee in its Austin office that is likely to be a witness in this case.

Northern California is the more convenient forum not just for Roku but for Plaintiff as well. Plaintiff is a Delaware LLC based in New York where one of its two co-founders and inventors resides.   However, Plaintiff's other co-founder and inventor, Christopher Otto, resides in Northern California where Roku is based.   Plaintiff has no presence in Texas nor ties to this District whatsoever.

## II.    BACKGROUND

Aside from suing Roku in the Western District of Texas ("WDTX"), Plaintiff Anonymous Media Research Holdings ("AMR") has no ties to this District.   AMR is a Delaware LLC based in New York.  Compl., ¶ 1.  There is no evidence that AMR has any office in Texas, does any business in Texas, or employs anyone in Texas.   Christopher Otto, co-inventor on all six patents-in-suit and co-founder of AMR, apparently resides in San Francisco.   Declaration of Patrick J. McKeever ("McKeever Decl."), Ex. A.  AMR's other co-founder / inventor, Jonathan Steuer, appears to live in New York and work for Los Angeles-based VideoAmp.  *Id.*, Ex. B.

The patents-in-suit claim purported improvements to automatic content recognition ("ACR") technology. Compl., ¶¶ 10-22. The Complaint accuses Roku's ACR technology which was acquired from Nielsen in 2021. *Id.*, ¶¶ 24, 42, 69, 83. Throughout the Complaint, AMR points to ***Nielsen's*** Video Advertising Privacy Statement as evidence of Roku's alleged infringement. *Id.*, ¶ 42 n. 14; ¶ 57 n. 22; ¶ 60 n. 25; ¶ 69 n. 29; ¶ 73 n. 32; ¶ 83 n. 38; ¶ 97 n. 46; ¶ 101 n. 50; ¶ 111 n. 54; ¶ 115 n. 58. The Complaint states that "[a]ll references to Nielsen ACR technology and capabilities herein are references to Roku's implementation of that technology and capability." *Id.*, ¶ 42 n. 13.

The development of Roku's ACR technology goes back further than Nielsen. Initially, the technology was developed by a Korean company named Enswers, Inc. Declaration of Virginie De Bel Air ("De Bel Air Decl."), ¶ 11. In 2015, Enswers was acquired by Gracenote. *Id.* In October 2016, Roku licensed the ACR technology from Gracenote. *Id.*, ¶ 12. A few months later, Gracenote was acquired by Nielsen. *Id.* In 2021, after licensing the ACR technology for several years, Roku acquired it from Nielsen as part of an acquisition of Nielsen's Advanced Video Advertising business. *Id.*, ¶ 13; *see also* Compl. ¶ 24.

Through these acquisitions, Roku came to employ dozens of individuals that formerly worked for Nielsen, Gracenote, and/or Enswers. De Bel Air Decl., ¶¶ 14-16. Many of these employees are based in Northern California or Seoul, Korea, but none are based in Austin or elsewhere in WDTX. *Id.*, ¶¶ 14-19. Two of Roku's most knowledgeable U.S.-based employees regarding the accused ACR technology are Virginie De Bel Air and Shashank Merchant, both of whom worked for Gracenote and Nielsen in Northern California and now work at Roku's headquarters in San Jose. *Id.*, ¶ 15. Ms. De Bel Air is featured in a September 2023 Roku blog post discussing the accused ACR technology. McKeever Decl., Ex. C. Mr. Merchant is a named

inventor on several Roku patents and patent applications related to ACR technology. *See, e.g.*, *id.*, Ex. D (U.S. Patent No. 10,956,484). The bulk of the engineering team that develops and supports the accused ACR technology is based in Seoul, Korea. De Bel Air Decl., ¶ 16. The team includes Charles Seo and Yongjoo Hong, both of whom were part of the team at Enswers that initially developed the technology and are thus likely witnesses. *Id.* The engineering team reports to Mr. Merchant in San Jose. *Id.*

On the business side, Louqman Parampath and Tommy Burk are two of Roku's most knowledgeable employees about how the accused ACR technology relates to Roku's advertising business. De Bel Air Decl., ¶ 18. Mr. Parampath is Vice President of Product Management—Advertising and is based in San Jose. *Id.* Mr. Burk is Senior Director of Ad Product Management and is based in New York. *Id.*

## III.    LEGAL STANDARD

The Court may transfer any action to any district or division where it might have been brought if that transfer serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). Whether to transfer venue is a preliminary issue that must be addressed at the outset of a federal action, and "disposing of that motion should unquestionably take top priority." *In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020).

The Fifth Circuit assesses transfer requests using the well-established private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Apple*, 979 F.3d at 1338 (quoting *In re Volkwagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The "public interest factors are: '(1) the administrative difficulties

flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law [or in] the application of foreign law." *Apple*, 979 F.3d at 1338.

If the proposed transferee forum is "clearly more convenient," then there is "good cause and the district court should therefore grant the transfer." *Volkswagen II*, 545 F.3d at 315. The "plaintiff's choice of venue is not an independent factor in the venue transfer analysis"; rather, the good-cause requirement reflects the appropriate deference to that choice. *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020); *see also Volkswagen II*, 545 F.3d at 314–15. "No factor is of dispositive weight," and the Fifth Circuit "has found an abuse of discretion even where a majority of factors are neutral." *In re TikTok, Inc.*, 85 F.4th 352, 358, 366 (5th Cir. 2023) (granting mandamus when two factors favored transfer and the rest were neutral).

In assessing a venue transfer motion, the Court does not presume the truth of the non-moving party's allegations, but instead considers any venue-related evidence and resolves whether it favors or disfavors transfer. *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) ("A motion to transfer under § 1404(a) calls upon the trial court to weigh a number of case-specific factors based on the individualized facts on record.").

## IV.    THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY THE MORE CONVENIENT VENUE

The Northern District of California ("NDCA") is clearly the more convenient forum for this case. Where, as here, "most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The Fifth

-4-

Circuit recently confirmed that "a district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318*); see also id.* at 366 ("A district court abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'") (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)). Indeed, as in *Volkswagen II*, "[t]he only connection between this case and the [Western] District of Texas is plaintiffs' choice to file []here." 545 F.3d at 318 (citation omitted).

### A.    This case could have, and should have, been filed in NDCA.

As an initial matter, there is no question that this case could have been brought in NDCA, as Roku is headquartered in that district. No jurisdictional obstacle prevented AMR from filing suit in NDCA.

### B.    The private interest factors overwhelmingly favor transfer.

#### 1.    Relative ease of access to sources of proof weighs in favor of transfer.

As this Court has recognized, "the location of relevant documents and information"—even electronically stored documents[1]—remains a relevant factor under Fifth Circuit precedent. *See Parus*, 2020 WL 4905809, at *3 (citing *Volkswagen II*, 545 F.3d at 316). *But see TikTok*, 85 F.4th at 358 ("[W]hen 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis.") (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). Importantly, "*relative* ease of

---

[1] That documents may be stored electronically does not undermine the import of their location. "[T]he Fifth Circuit [has] clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'" *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *rep. & rec. adopted*, No. 1:17-CV-141- LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quoting *Volkswagen II*, 545 F.3d at 316).

access, not *absolute* ease of access" is what matters.  *TikTok*, 85 F.4th at 358 (quoting *Radmax*, 720 F.3d at 288).  "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case."  *TikTok*, 85 F.4th at 358; *see also, e.g.*, *Media Chain, LLC v. Roku, Inc.*, No. 1:21-CV-27-LY, 2021 WL 5994809, at *2 (W.D. Tex. Dec. 7, 2021) (this factor favors transfer where, as here, neither plaintiff nor the inventor of the asserted patents is based in Texas and the relevant documents are maintained in California).

Courts analyze this factor in light of the distance that documents or other evidence must be transported from their existing location to the trial venue.  *Volkswagen II*, 545 F.3d at 316.  This generally turns on which party is most likely to have the greater volume of documents relevant to the case.  *See Nintendo*, 589 F.3d at 1198.  As in most patent cases—especially those brought by non-practicing entities like AMR—Roku, as the accused infringer, likely possesses more of the relevant documents in this case.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

In *Media Chain*, this Court reasoned that this factor favored transfer to NDCA because the pertinent documents were likely to be in California where the accused Roku technology was developed.  2021 WL 5994809 at *2 ("Because the teams based in California have developed the services that are most likely to have infringed upon the Asserted Patents in this case, it is most likely that the documents pertinent to this case will be located in California.").  The same is true here.  As Ms. De Bel Air explains, the technical documents and source code related to the accused ACR technology are generally created and maintained by the engineers that work on the ACR technology who, as discussed, are based at Roku headquarters in San Jose and in Seoul, Korea.

De Bel Air Decl., ¶ 19.  Because "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval," should be considered under this factor, *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021), ease of access to Roku's sources of proof favors transfer to NDCA.

To the extent AMR argues that Roku's documents can be accessed from Austin, "this antiquated era argument was essentially rejected in *Volkswagen* because it would make ease of access irrelevant as a factor."  *Media Chain*, 2021 WL 5994809 (citing *Volkswagen II*, 545 F.3d at 316).  Moreover, while Roku generally stores its documents on cloud servers, those servers are managed and maintained by Roku's IT group based in San Jose, California.  De Bel Air Decl., ¶ 19.  Roku's "Trust Engineering" team, which oversees source code discovery in connection with litigation, when necessary, is also based in San Jose.  *Id.*  Accordingly, this proof will be easier to access in NDCA than in WDTX.

While AMR likely possesses less evidence than Roku, *Genentech,* 566 F.3d at 1345, AMR's evidence is not located in WDTX either because AMR has no presence in the District.  Presumably AMR's documents and evidence are in Northern California with Mr. Otto and/or in New York with Mr. Steuer.

Accordingly, this factor favors transfer.

### 2.    Availability of compulsory process favors transfer.

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order."  *Parus*, 2020 WL 4905809, at *4.  This factor favors transfer where "non-party witnesses . . . are outside the [Western] District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available.  *TikTok*, 85 F.4th at 360 (quoting *Volkswagen II*, 545 F. 3d at 316).  A court may subpoena a witness to attend trial only (a)

"within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. R. 45(c)(1)(A), (B).

At a minimum, there are significant third-party sources of prior art evidence located in NDCA.  For example, all six of the AMR patents-in-suit identify Shazam Entertainment as a prior art developer of ACR technology and reference a particular Shazam patent application filed in 2002 for its disclosures regarding content recognition techniques.[2]  McKeever Decl., Ex. E. Shazam initially launched in the UK in 2002 and then in the U.S. in 2004.  McKeever Decl. Ex. F (2006 journal article discussing Shazam).  Shazam was acquired in 2018 by Apple, Inc., based in Cupertino, CA.  *Id.*, Ex. G.  Dr. Avery Wang, co-founder of Shazam and first-named inventor on the 2002 Shazam patent application referenced by AMR's patents now works at Apple in Northern California.  *Id.*, Ex. H.  Dr. Wang's co-inventor on the Shazam patent application, Dr. Julius Smith, is a professor emeritus at Stanford University in Palo Alto.  *Id.*, Ex. I.

Shazam / Apple is not the only significant source of relevant prior art in NDCA.  Audible Magic, based in Los Gatos, CA, has developed and patented ACR technology since 1999—years prior to AMR filing its first patent application.  McKeever Decl., Ex. J.  For example, Audible Magic owns U.S. Patent No. 8,972,481, which was filed in 2001 and, like AMR's asserted '768 and '848 patents, discloses using ACR technology to construct playlists of identified content.  *Id.*,

---

[2] *See, e.g.,* Compl., Ex. 1 ('768 patent) at 1:39-42 ("For example, Philips, **Shazam Entertainment**, and others have marketed systems for identifying songs played into a mobile phone.") (emphasis added); *id.* at 5:38-48 ("Content recognition system 124 is adapted to implement one or more known content recognition methods that identify content by extracting parameters from a media signal and applying an algorithm to those parameters to search for a content match. Those skilled in the art will recognize that many such methods and algorithms exist. One such example is described in U.S. patent application Ser. No. 09/839,476 entitled 'System and Methods for Recognizing Sound and Music Signals in High Noise and Distortion' by Wang et al. and published Jun. 27, 2002 with publication number US2002/0083060.").

Ex. K.  In 2001, Audible Magic partnered with MeasureCast to use ACR technology to verify on-line advertisement delivery.  *Id.*, Ex. L.  In 2002, Video Monitoring Services of America, L.P. deployed a radio ad monitoring system based on Audible Magic's ACR technology.  *Id.*, Ex. M. AMR's repeated allegations in the Complaint that Roku's ability to detect ads using fingerprinting technology and match the ads to a reference library somehow evidences Roku's infringement of the patents-in-suit confirms the relevance of Audible Magic's prior art activity.  *See* Compl., ¶¶ 28, 43, 58, 69, 84, 98, 11.

These third parties that are likely to possess significant prior art would be within the court's subpoena power court if the case is transferred to NDCA but not if the case remains in WDTX. Accordingly, this factor favors transfer as well.

### 3.    The cost of attendance for willing witnesses strongly favors transfer.

Witness convenience is "an important factor."  *Genentech*, 566 F. 3d at 1343.  The Fifth Circuit uses a "100-mile threshold" to assess this factor.  *TikTok*, 85 F.4th at 361 (quoting *Volkswagen II*, 545 F.3d at 317); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (applying the 100-mile rule).  "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled."  *TikTok*, 85 F.4th at 361 (quoting *Volkswagen II* 545 F.3d at 317).  This is an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time . . . meal and lodging expenses" and time "witnesses must be away from their regular employment. . . . family, and community."  *Id.* (quoting *Volkswagen II*, 545 F.3d at 317). "Witnesses also suffer 'personal costs associated with being away from work, family, and community' when they testify far from home."  *Id.* (quoting *Volkswagen II*, 545 F.3d at 317).

This factor strongly favors transfer, particularly given the substantial distance between WDTX and NDCA.  As discussed, several of the likely Roku witnesses with detailed knowledge regarding the accused ACR technology are based in NDCA.  These witnesses would have to travel more than 1500 miles to Austin, incurring substantial "additional travel time . . . meal and lodging expenses[,]" as well as time "away from their regular employment . . . family, and community." *TikTok*, 85 F.4th 361–62 (quoting *Volkswagen II* 545 F.3d at 317).  Given the Fifth Circuit's reliance on the 100-mile threshold, NDCA is a much more convenient venue for the U.S.-based Roku witnesses.

Additionally, as discussed, a substantial portion of the development work on the accused ACR technology took place in Korea and the bulk of Roku's engineering team that supports the ACR technology is based there.  De Bel Air Decl., ¶¶ 11-15.  In *TikTok*, the Fifth Circuit explained that for witnesses located in China "it is **indisputable** that the Northern District of California is ***clearly more convenient*** . . . than the Western District of Texas." 85 F.4th at 361 (emphasis added); *see also In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023) (finding district court abused its discretion in finding willing witness factor weighed against transfer because NDCA would have been more convenient for witnesses based in NDCA and in Korea).  By the same logic, it is indisputable that NDCA is clearly more convenient than WDTX for the Roku witnesses based in Korea.

In contrast to NDCA, WDTX is not a convenient venue for any of Roku's likely witnesses.  Indeed, Roku has only identified *two* employees based in Austin who have ever had any involvement with the accused ACR technology.  Muhammad Karrar and Siva Palanivelu are engineers based in Austin who joined Roku in January 2022 and June 2022, respectively. De Bel Air Decl., ¶ 17.  In the past, Messrs. Karrar and Palanivelu performed quality assurance testing on

Roku's ACR technology, but this testing work has since been transitioned to the engineering team in Korea. [3]  De Bel Air Decl., ¶ 17.  In contrast to Roku engineers in NDCA and in Korea, Messrs. Karrar and Palanivelu neither designed nor developed the accused ACR technology.  *Id*.  And in contrast to Ms. De Bel Air and Mr. Merchant, Messrs. Karrar and Palanivelu did not work for Nielsen, Gracenote, or Enswers prior to joining Roku.  *Id.*

Apart from venue discovery, Messrs. Karrar and Palanivelu are unlikely to be witnesses in this case.  Roku's quality assurance testing of the accused ACR technology is immaterial.  AMR is accusing Roku of directly infringing the patents-in-suit by obtaining data collected using ACR technology and processing it in particular ways.  *See* Compl., ¶¶ 39, 54, 66, 80, 94, 108.  AMR's Complaint never references testing of the accused technology.  Further, in the unlikely event testing becomes relevant for some reason down the road, Roku engineers in Korea will be more knowledgeable about such testing because they—unlike Messrs. Karrar and Palanivelu—are currently responsible for performing the testing.  De Bel Air Decl., ¶ 17.

NDCA is also the more convenient venue for AMR's likely witnesses.  As discussed, Mr. Otto, co-founder of AMR and co-inventor on the asserted patents, appears to reside in Northern California.  Even Mr. Steuer, who is based in New York, "will only be 'slightly more inconvenienced by having to travel to California' than to Texas."  *Apple*, 979 F.3d at 1342 (discussing witnesses based in New York).  This "slight" inconvenience to Mr. Steuer pales in comparison to the inconvenience that would be imposed on Mr. Otto and the numerous Roku witnesses based in Northern California if they have to travel 1500+ miles to Austin.

Accordingly, this factor strongly favors transfer.

---

[3] Mr. Karrar and Mr. Palanivelu are now part of the Ad Data Activation and Ad Customer Interface teams, respectively.  De Bel Air Decl., ¶ 17.  Neither role touches on ACR.  *Id.*

###    4.    Other practical problems favor transfer.

This "factor considers 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). "[T]he fact that [NDCA] is the forum where [Roku] is headquartered and where the facts of this case took place makes it much more likely a transfer would eventually minimize the inconvenience to all involved.  Thus, this factor weighs in favor of transfer." *Jones v. Angelo State Univ.*, No. A-09-CA-652-SS, 2009 WL 10699928, at *6 (W.D. Tex. Oct. 19, 2009); *see also Flick v. Wyeth LLC*, No. 6:10CV658, 2012 WL 13008725, at *3 (E.D. Tex. Jan. 19, 2012) ("There is no indication that a venue transfer . . . would cause the trial of this matter to be more difficult, slower and more expensive for the parties.").

The very early stage of this case also favors transfer.  *See Media Chain,* 2021 WL 5994809, at *3 ("[T]he fact that this case has not progressed to claims construction and is therefore in its early stages weighs in favor of transfer."); *Parus*, 2020 WL 4905809, at *6–7 ("[T]his case is in its early stages, meaning any increase in judicial economy from the Court's experience in these early stages of litigation is likely to be limited.").  AMR has only filed its Complaint.  Apart from the present motion to transfer, there has been no motion practice.  The public interest factors also favor transfer.

###    5.    Local interest strongly favors transfer.

The local interest factor "most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'"  *Apple*, 979 F.3d at 1345 (quotation omitted).  In *Apple*, for example, there was no dispute that Apple had a "substantial" presence in WDTX, including its existing Austin campus and planned "to build a second campus in Austin."  *Id*. at 1344.  Nevertheless, the Federal Circuit held that these "general contacts with the forum" were

-12-

"untethered to the lawsuit" and thus entitled to little weight. *Id*. at 1345. Instead, what mattered was that "the accused products were designed, developed, and tested in NDCA," and that "the lawsuit 'calls into question the work and reputation of several individuals residing' in NDCA." *Id*. (quotation omitted). As a result, notwithstanding Apple's presence in WDTX, the Federal Circuit held that "this factor weighs in favor of transfer." *Id*.

For the same reasons, this factor favors transfer. NDCA is home to Roku's headquarters, where roughly half of Roku's employees are based. NDCA is one of the places where the accused ACR technology was developed—by Gracenote, then by Nielsen, and most recently by Roku. *See, e.g., Google*, 2021 WL 5292267 at *2 (local interest factor favored transfer where "Google researched, designed, and developed the accused functionalities in the Northern District of California and . . . no underlying events giving rise to this suit occurred in the Western District of Texas"); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding this factor favors transfer when defendants are headquartered, develop products at issue, and employ many people in transferee venue).

This District, on the other hand, has no substantial local interest in this action. *See Volkswagen II*, 545 F.3d at 317-18 (local interest factor favored transfer where there was "no relevant factual connection" to the transferor division). AMR itself is located in a different district—the Southern District of *New York*—which does not give rise to a localized interest here. *See, e.g., Promote Innovation LLC v. Schering Corp.*, No. 2:10-CV-248-TJW, 2011 WL 665817, at *4 (E.D. Tex. Feb. 14, 2011). "[W]here the plaintiff has virtually no connection to the chosen forum, a plaintiff's choice is entitled to little deference." *Media Chain, LLC v. Roku, Inc.*, No. 1:21-CV-27-LY, 2021 WL 5994809, at *3 (W.D. Tex. Dec. 7, 2021). That Roku has an Austin office does not change the analysis. The "mere presence" of a party's personnel or facilities in a

venue, when those personnel or facilities have nothing to do with the case, does not create a local interest. *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014). Relying on a party's mere presence in a district "improperly conflate[s]" the test for venue under Section 1400 with the transfer factors under Section 1404. *Apple*, 979 F.3d at 1346. None of the relevant witnesses, evidence, claims, or defenses in this case has any connection to Roku's Austin office. As this Court had correctly found before, based on similar facts, "[t]here is no dispute [the defendant] has a presence in this district, but that presence is unrelated to this litigation. The NDCA is clearly the more convenient venue." *DataQuill, Ltd.*, 2014 WL 2722201, at *5. *See also Mimedx Grp., Inc. v. Texas Hum. Biologics, Ltd*., No. 1:14-CV-464-LY, 2014 WL 12479284, at *3 (W.D. Tex. Aug. 12, 2014) (Yeakel, J.) ("Defendants and their employees are local to the San Antonio area. The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests.").

### 6.    Familiarity with governing law and conflicts of law is neutral.

Both NDCA and this Court are familiar with and will apply the relevant federal law. *See TS Tech USA*, 551 F.3d at 1320 (Fed. Cir. 2008) ("[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims.") (internal quotation marks omitted). This factor is neutral.

### 7.    Administrative difficulties slightly favor transfer.

The administrative difficulties factor looks to the relative docket congestion of the two venues, not merely the expected time to trial. *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1312 (Fed. Cir. 2020); *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *DataQuill, Ltd.*, 2014 WL 2722201, at *4. It is "the most speculative" factor in the transfer analysis because statistics do "not always tell the whole story." *Genentech*, 566 F.3d at 1347.

Recently, in granting a transfer motion to NDCA, this Court acknowledged that WDTX

statistically provides a "slightly faster trial time" than does NDCA, but held that this was "offset by Austin's particularly heavy civil caseload, [such that this] factor is neutral." *Yeti Coolers, LLC v. Love Deals Inc.*, No. 1:23-CV-79-RP, 2023 WL 4754479, at *7 (W.D. Tex. July 24, 2023); *see also Media Chain, LLC v. Roku, Inc.*, No. 1:21-CV-27-LY, 2021 WL 5994809, at *3 (W.D. Tex. Dec. 7, 2021) (referencing the "weighted filings per judge in the Austin division" and treating the factor as neutral given "heavily weighted caseloads" in both WDTX and NDCA). Additionally, AMR "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) (finding court congestion factor neutral in reversing denial of transfer from WDTX to NDCA). In any event, the law is clear that "the speed of the transferee court should not alone outweigh" the other factors. *Apple*, 979 F.3d at 1344 n.5 (quoting *Genentech*, 566 F.3d at 1347); *see also Adobe*, 823 F. App'x at 932 (holding district court erred by giving relative court congestion factor "dispositive weight" in denying transfer from WDTX to NDCA).

Finally, this case is presently on the docket of the vacant judgeship (Judge Docket II), which adds uncertainty as to how quickly this case would proceed to trial in this District. For this reason, the administrative difficulties factor slightly favors transfer or is at worst neutral.

## V.    CONCLUSION

This is not a close case—every relevant factor favors transfer or is neutral. The Fifth Circuit's recent *TikTok* decision and earlier *Volkswagen II* decision leave no doubt that such cases must be transferred. Because NDCA is clearly the more convenient venue, Roku respectfully asks that the Court transfer this case to NDCA for the convenience of the parties and witnesses.

Dated: January 8, 2024                                          Respectfully submitted,

                                                                */s/ Matthew C. Bernstein*
                                                                Matthew C. Bernstein, Bar No. 199240
                                                                MBernstein@perkinscoie.com
                                                                Patrick J. McKeever (*Pro Hac Vice*)
                                                                PMcKeever@perkinscoie.com
                                                                **PERKINS COIE LLP**
                                                                11452 El Camino Real, Ste 300
                                                                San Diego, California 92130-2080

                                                                Maria A. Stubbings (*Pro Hac Vice*)
                                                                MStubbings@perkinscoie.com
                                                                **PERKINS COIE LLP**
                                                                700 13th Street, NW, Suite 800
                                                                Washington, DC 20005

                                                                Attorneys for Defendant Roku, Inc.

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 5, 2024, counsel for Defendant conferred by email with counsel for Plaintiff Anonymous Media Research Holdings, LLC. Plaintiff responded by email on January 5, 2024 and indicated it was opposed to the Motion.

                                                                */s/ Matthew C. Bernstein*
                                                                Matthew C. Bernstein

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served upon all counsel of record, via the Court's CM/ECF system on January 8, 2024.

                                                                */s/ Matthew C. Bernstein*
                                                                Matthew C. Bernstein