**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ANONYMOUS MEDIA RESEARCH HOLDINGS, LLC, | § § § | |
| *Plaintiff,* | § § | Case No. 1:23-cv-01143-DII |
| v. | § § | |
| ROKU, INC., | § § | Jury Trial Demanded |
| *Defendant.* | § § § § | |

---

**PLAINTIFF ANONYMOUS MEDIA RESEARCH
HOLDINGS, LLC'S RESPONSE TO MOTION TO TRANSFER VENUE**

---

TABLE OF CONTENTS

Table of Contents ........................................................................................................................ 2

Table of Authorities ................................................................................................................... 3

Introduction & Summary of Response ....................................................................................... 1

Factual and Procedural Background .......................................................................................... 2

   I.   Anonymous Media holds patents that turn raw, "dirty" ACR data into commercially useful media measurement data, with significant value for targeted advertising. .............. 2

   II.  Roku infringes on Anonymous Media's patents dating back to 2016. .............................. 3

   III.  The evidence and witnesses are not concentrated in Korea and California; instead, they are dispersed across Texas, United Kingdom, New York, Boston, California, and Korea. 4

Argument and Authorities .......................................................................................................... 9

   I.   Roku must "clearly" demonstrate that NDCA is "clearly more convenient" than WDTX, and the district court resolves reasonable factual inferences in Anonymous Media's favor. ........................................................................................................................................ 9

   II.  Two private-interest factors weigh against transfer and the other two are neutral—not one weighs in favor of transfer. ........................................................................................... 10

      1.  The relative ease of access to non-witness proof is, at minimum, neutral because electronic evidence is equally accessible from NDCA and WDTX, and there is physical evidence in WDTX and New York. ........................................................... 10

      2.  The availability of compulsory process weighs against transfer because two former Roku employees are subject to subpoena power in WDTX. .................................... 12

      3.  The cost of attendance for willing witnesses weighs against transfer when the Court considers all relevant witnesses ................................................................................ 14

      4.  There are no practical problems, so this factor is neutral ......................................... 18

   III.  The public-interest factors do not support transfer because they are all neutral. ............. 19

      1.  Administrative difficulties flowing from court congestion are neutral in the case of a non-practicing entity like Anonymous Media, according to the Federal Circuit. ...... 19

      2.  The local interest in having localized interests decided at home is neutral. ............. 19

      3.  The familiarity of the forum with the governing law and avoidance of unnecessary conflicts of laws or application of foreign law are both neutral. .............................. 20

Conclusion ............................................................................................................................... 20

TABLE OF AUTHORITIES

CASES

*Defense Distributed v. Bruck*,
    30 F.4th 414, 433 (5th Cir. 2022) ........................................................................ passim

*In re Apple Inc.*,
    979 F.3d 1332, (Fed. Cir. 2020) ................................................................................ 22

*In re Clarke*,
    94 F.4th 502, (5th Cir. 2024) ................................................................... 1, 10, 12, 23

*In re Google*,
    58 F.4th 1379, (Fed. Cir. 2023) ................................................................................ 21

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194, (Fed. Cir. 2009) ................................................................................ 15

*In re TikTok, Inc.*,
    85 F.4th 352, (5th Cir. 2023) .............................................................................. passim

*Media Chain LLC v. Roku, Inc.*,
    No. 1:21-CV-LY, 2021 WL 5994809, (W.D. Tex. Dec. 7, 2021) .............................. 12, 15, 20

*Parus Holdings Inc. v. LG Electronics Inc.*,
    No. 6:19-cv-00432-ADA, 6:19-cv-00437-ADA, 2020 WL 4905809, (W.D. Tex. Aug. 20,
    2020) ........................................................................................................................ 20

*Rafqa Star, LLC v. Google LLC*,
    2023 WL 6050593, (W.D. Tex. Sept. 15, 2023) ............................................................ 10, 19

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
    329 F.3d 823, (Fed. Cir. 2003) .................................................................................. 9

*SynKloud Technologies, LLC v. Dropbox, Inc.*,
    No. 6:19-CV-00525-ADA, 2023 WL 2494574, (W.D. Tex. May 14, 2020) .................... 11, 22

*Turner v. Cincinnati Ins. Co.*,
    No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, (W.D. Tex. Jan. 14, 2020) ........................ 14

*Van Dusen v. Barrack*,
    376 U.S. 612, (1964) ................................................................................................ 12

*Yeti Coolers, LLC v. Love Deals Inc.*,
    No. 1:23-cv-79-RP, 2023 WL 4754479, (W.D. Tex. July 24, 2023) ...................................... 21

STATUTES

28 U.S.C. § 1404(a) ........................................................................................................ 9
35 U.S.C. § 286 ............................................................................................................. 3

### INTRODUCTION & SUMMARY OF RESPONSE

Defendant Roku, Inc. ("Roku") claims this "is not a close case" on transfer. Mot. at 15. Plaintiff Anonymous Media Research Holdings, LLC ("Anonymous Media") agrees, but for a different reason: Not one factor, properly evaluated based on all the evidence, favors transfer. Instead, they are all neutral or weigh *against* transfer.

On the private-interest factors, the non-witness evidence is mostly electronic (source code and technical documents) and Roku's witnesses have confirmed that evidence is equally available in NDCA or WDTX, unlike *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023). Roku does not identify one piece of evidence that is more accessible in NDCA than it is in WDTX. As for compulsory process, there are two relevant former Roku employees subject to subpoena power in WDTX, including Michael Veach who, unlike the witnesses Roku identified, has specific knowledge of Roku's internal technical work on the Accused ACR Instrumentalities before 2021. Roku identifies no such witnesses in NDCA.

As for the convenience for willing witnesses, Roku disregards witnesses located in the Western District of Texas; New York; Cardiff, United Kingdom; and Boston, Massachusetts, all of whom face greater inconvenience if this case proceeded in NDCA. Roku cannot meet its burden of "clearly establishing" that NDCA is "clearly more convenient" for witnesses by simply ignoring relevant witnesses not located in NDCA or Korea, which is what it has done. *See In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024).

On the public-interest factors, this Court and the Federal Circuit have previously held that the administrative congestion factor is neutral on these facts. As for the localized interest factor, Roku's Austin office was involved in the events giving rise to this lawsuit, including internal testing

of Roku's automatic content recognition ("ACR") capabilities, leading efforts to license Roku's Smart TV software, and evaluating Anonymous Media's patent portfolio.

When all relevant facts are considered, Roku has not come close to meeting its burden for transfer, and the Court should deny Roku's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.    Anonymous Media holds patents that turn raw, "dirty" ACR data into commercially useful media measurement data, with significant value for targeted advertising.**

Anonymous Media holds patents covering systems and methods for processing raw "dirty" data from ACR technology into clean media measurement results that are commercially useful for targeted advertising. Compl. ¶¶ 18-22.

Many consumer electronics, like Smart TVs, have ACR technology that recognizes the content that a consumer is viewing in real time by capturing "fingerprints" of that content. *Id.* ¶ 11. These companies then leverage that data to, among other things, create a comprehensive picture of media consumption practices and sell targeted advertising. *Id.* ¶ 13. Roku is one of these companies.

Raw ACR data is "dirty"—error-prone and incomplete. For media companies like Roku to *use* this data commercially, the data must be processed and analyzed in a way to identify and correct errors or omissions, and to derive useful media measurement insights. *Id.* ¶¶ 14-16. Anonymous Media's patents do just that. *Id.* ¶¶ 18-22.

For example, Anonymous Media developed an invention to improve on commodity ACR by "scrubbing" a stream of raw ACR results against an expected pattern reference (*i.e.*, the expected playlist) to fill gaps, resolve confusions, and correct errors. *Id.* ¶ 20. Anonymous Media also invented a method for determining the type of channel by which a user consumed content based on at least two sequentially ordered content identifications. *Id.* ¶ 21. And Anonymous Media further pioneered a process to deduce user actions, like skipping or pausing content, based on the offset of

time positions of the "fingerprints" as compared to the time positions of the reference content sequence. Compl. ¶ 22. These inventions allow Roku to translate millions of fingerprints into the insightful media measurements that advertisers seek.

**II.    Roku infringes on Anonymous Media's patents dating back to 2016.**

Roku makes a significant amount of money through targeted advertising, much of which requires Roku to not only collect but also *post-process* ACR data into commercially useful media measurements. *Id.* ¶¶ 25-30. Based on Roku's own description of how it manages ACR data, Roku's ACR software and hardware architecture carry out the exact functions claimed in Anonymous Media's patents and therefore infringe on those patents. *Id.* ¶ 29.

Prior to filing this lawsuit, Anonymous Media tried to talk to Roku. *Id.* ¶ 31. Anonymous Media's representatives prepared claim charts of publicly available evidence showing Roku's use of its patents and shared them with Roku. *Id.* ¶¶ 32-33. Roku rejected Anonymous Media's discussion efforts. Compl. ¶ 34. As a result, Anonymous Media sued Roku to enforce its patents and collect just compensation for Roku's infringement. *Id.* ¶ 35.

In its motion to transfer, Roku treats this lawsuit as only about whether it infringed on the Asserted Patents beginning in 2021, when it acquired ACR technology as part of Nielsen's Advanced Video Advertising business. Mot. at 2 ("The Complaint accuses Roku's ACR technology which was acquired from Nielsen in 2021."). But in the very next paragraph, Roku admits that it was using ACR technology as early as October 2016. *Id.*

Anonymous Media's claims do not solely arise from Roku's actions *after* it acquired Nielsen's Advanced Video Advertising business in 2021. The statute of limitations for patent infringement is six years. 35 U.S.C. § 286. Anonymous Media's claims date back, at least, to Roku's use of infringing ACR technology in 2017.

III.    **The relevant evidence and witnesses are not concentrated in Korea and California; instead, they are also dispersed across Texas, New York, the UK and Boston.**

Discovery has revealed that Roku's assertion—that all the evidence and witnesses in this case are in Korea or California—is inaccurate. That is unsurprising considering that the Roku declarant in support of its transfer motion never █████████████████, which only begs the question of how she could determine relevant witnesses. Ex. 1, De Bel Air Depo., at 102:19-21. De Bel Air was not ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████. *Id.* at 37:2-39:16, 72:17-74:5. She also did not t███████████████████████ ██████████████████ before writing it. *Id.* at 78:3-6.

In truth, rather than being concentrated in San Jose and Korea, the potentially relevant witnesses and physical evidence are also scattered across Texas, the UK, New York, and Boston.

***Witnesses and Evidence in the Western District of Texas.*** Roku's Austin office is not a remote outpost. Scott de Haas, Roku's Senior Vice President of Product Engineering and Operations, started and is based out of the Austin office. De Haas manages over 300 employees across the world and is "familiar with Roku's research and development, engineering, design, marketing, distribution, and sale of its products." Ex. 2 ¶ 5. Tom McFarland, Vice President of Business Development, is also based in Austin and ████████████████████████ ██████ ████████ ████ ████████ ████ ██ ████████ █ ████ ██ ██ ████ ████ ████ ██████████████████ Ex. 3, Roku's Interrogatory Resp., at 10.

Roku boldly asserts it is "not aware of a single employee in its Austin office that is likely to be a witness in this case." Mot. at 1. Roku entirely ignores two key former employees of its Austin office (among other witnesses). ████████████████████████████████████████ ████████████████████████████████████████████████████

███████████████████████████████████████████████. Ex. 3 at 15-16. He worked

for Roku from ████████████████████████. *Id.* at 16. De Bel Air omitted him from her

declaration despite the fact that ████████████████████████████. Ex. 1 at 37:2-4.

Veach still lives in this District. Ex. 13, Veach LinkedIn. Another former Roku employee, Joel

Teklu, had ████████████████████████████████████████████████

███████████████████████████. Ex. 4, Teklu LinkedIn; Ex. 3 at 9. Teklu worked for

Roku from December 2021 to October 2023, but still resides in the Western District of Texas. Ex. 4.

Additionally, Lisa Mandrusiak, a Roku in-house intellectual property lawyer in Austin, will

be a key witness on willful infringement. Ex. 19. During the Parties' pre-suit commercial

discussions, Roku specifically asked ████████████████████████████████

████████████████████. Ex. 5 at 6, 2. ██████████████████████████

███████████████████████████████████████████████████████

████████████████████████████. Ex. 34.

There are also three Roku engineers in Austin, Texas who ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████.

Importantly, ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████

***Witnesses in Cardiff, United Kingdom.*** There are at least two highly relevant witnesses based in Cardiff: ███████████████████████████████████████████████████████████████████ Ex. 7 at 13:11-14:8, 23:3-25, 70:14-73:11; *see also* Exhs. 24-26. He will likely have intimate knowledge of Roku's

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *Id.* at 26:6-27:13.

Roku also identified over ████████ individuals in Cardiff, United Kingdom, including at least ████████████████████████████████████████████████████████████████████ ████████████████ *See* Ex. 3 at 17. ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Ex. 1 at 53:16–54:12, Ex. 11 at 4–5. The ████

project is therefore relevant to Anonymous Media's claims.

**Witnesses and Evidence in New York.** There are several witnesses in New York—and physical evidence too. The first-named inventor and principal of Anonymous Media, Jonathan Steuer, resides in New York. Ex. 8, Steuer Declaration. Steuer has an old hard drive that contains server data from an old Anonymous Media prototype. *Id.* ¶ 4. Roku has served discovery on Anonymous Media's prototypes. Ex. 9 at 11. Because of the age of that hard drive, any inspection or data collection will need to be done in New York. Ex. 8 ¶ 5.

Michael Mauriel, Anonymous Media's patent prosecutor, also lives in New York, and he is a key witness in response to Roku's asserted defense of prosecution laches, along with other prosecution-related defenses. *See* Ex. 8 ¶ 6; Roku's Answer, Dkt. 15, ¶¶ 127-29; Ex. 20, Mauriel Decl., ¶¶ 3, 5. All of his prosecution files are also located in New York. Ex. 20 ¶ 4.

Likewise, there are witnesses with relevant information concerning Anonymous Media's development and attempted commercialization of its invention set forth in the Asserted Patents in New York: Mike Pears with Musikube, Rolfe Swinton with RealityMine, and Ozer Teitelbaum with OceanTomo. Teitelbaum was directly involved in the discussions with Roku prior to this lawsuit about Anonymous Media's Intellectual Property. Ex. 8 ¶¶ 8-12; Ex. 21, Teitelbaum Decl., ¶¶ 2, 3.

Roku has several knowledgeable witnesses in New York too:

- ███████████████████████████████████████████████████
  █████████████████. These individuals would have intimate knowledge of why Roku
  acquired Nielsen's ACR technology in 2021.

- ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████.

- ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ███████████████████████████████████████████████████

███████████████████

- █████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████

- ███████████████████████████████████████
████ ███████ ████ ██████ █████ ████ ████ ████ ██████ ██████
████████████

Two other highly relevant witnesses are in New York. ████████████████████

████████████████████████████████████████. Ex. 10 at 34. He would

have extensive knowledge of Roku's early efforts to use ACR data in advertising, and the value to

Roku of entering that space. ████████████████████████████████████

████████████. Ex. 3 at 19, 21. Roku has stated these witnesses are no longer "employees" but has

not specified whether they are willing to come to trial.

   ***Witnesses in Boston.*** There are additional Roku witnesses in Boston with knowledge of how

Roku ███████████████████████████████████████

██████████████████████. Ex. 3 at 16.

█████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

To be clear, these individuals from Texas, Boston, New York, and the UK are just the ones with specifically relevant knowledge that Anonymous Media has discerned through limited venue discovery. As shown in Roku's recent discovery responses (provided only after the Court granted a motion to compel), the entire list remains very long. *See* Ex. 11. It is likely that more relevant witnesses dispersed across these locations may emerge during full, merits discovery.

### ARGUMENT AND AUTHORITIES

**I.    Roku must "clearly" demonstrate that NDCA is "clearly more convenient" than WDTX, and the district court resolves reasonable factual inferences in Anonymous Media's favor.**

The regional law of the circuit, here the Fifth, governs transfers under 28 U.S.C. § 1404(a). *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

"Plaintiffs are permitted to engage in a certain amount of forum shopping." *In re TikTok, Inc.*, 85 F.4th 352, 357 (5th Cir. 2023). And "some inconvenience is expected and acceptable" for a defendant "haled into court." *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). A defendant can attack a plaintiff's venue choice by moving to transfer venue under Section 1404(a) and "clearly establish[ing] good cause" for a transfer to the defendant's chosen venue because it is "clearly more convenient" for the witnesses and parties in the interest of justice. *See In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (internal citation omitted).

The defendant's burden is a meaningful one and bears emphasis because Roku comes nowhere close to meeting it: "At minimum, showing 'good cause' requires the movant 'clearly to demonstrate' that its chosen venue is 'clearly more convenient.'" *Id.*   "Good cause" requires the defendant to establish "(1) that the marginal gain in convenience will be significant, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *Id.* The defendant **cannot** "merely show[] that the

transferee venue 'is more likely than not to be more convenient.'" *Id.*

To evaluate whether a defendant has met its burden, courts consider specific private- and public-interest factors. The inquiry is a relative one. *Id.* at 510-11. The Court compares the analysis of each factor relatively between the plaintiff's chosen venue and the defendant's proposed venue. *Id.* at 510 n.9. No single factor is dispositive, but at the same time, the analysis cannot be reduced to simply "raw counting" the factors in favor, against, or neutral as to transfer, weighing each factor the same. *In re TikTok*, 85 F.4th at 358. Neutral factors cannot be weighed in favor of transfer. *Defense Distributed*, 30 F.4th at 434.

While district courts may make credibility determinations, they also "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *See Rafqa Star, LLC v. Google LLC*, 2023 WL 6050593, at *1 (W.D. Tex. Sept. 15, 2023) (making credibility determinations based on vague and contradictory evidence); *SynKloud Technologies, LLC v. Dropbox, Inc.*, No. 6:19-CV-00525-ADA, 2023 WL 2494574, at *2 (W.D. Tex. May 14, 2020) ("Courts may 'consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party.'").

## II. Two private-interest factors weigh against transfer and the other two are neutral—not one weighs in favor of transfer.

### 1. The relative ease of access to non-witness proof is either neutral (at minimum) or weighs against transfer because most evidence is equally accessible from NDCA and WDTX, while some evidence are stored only in WDTX and New York.

When the "vast majority" of non-witness evidence is electronic and is equally accessible in either venue, "this factor bears less strongly on the transfer analysis." *In re TikTok*, 85 F.4th at 358-59.

Here, the "vast majority" of evidence is electronic and equally accessible from NDCA or WDTX. ███████████████████████████████████████████████████

████████████████████████ Ex. 3 at 8; Ex. 6 at 41:23-43:7, 63:13-64:8, Ex. 7 at 20:19-21:5, 56:15-57:11, 58:5-:24. ████████████████████████████████

████████████████████████████ Ex. 7 at 24:6-19; Ex. 1 at 12:6-13:11, 15:23-17:4.

The only examples of evidence that is not equally accessible in both venues are either in Texas or closer to Texas than California. ██████████████████████████████████

███████████████████████ Ex. 6 at 49:1-18, 60:23-62:20. And a nearly twenty-year old Anonymous Media hard drive can only be inspected in New York, which is closer to Texas than California. Ex. 8 ¶ 12; *In re TikTok*, 85 F.4th at 359 n.6 (recognizing that occasionally non-witness evidence will require witnesses to travel to access it).

On the other hand, Roku does not identify a single piece of evidence that is more accessible from NDCA than it is from WDTX. Instead, Roku simply cites a prior decision from this Court in *Media Chain LLC v. Roku, Inc.*, No. 1:21-CV-LY, 2021 WL 5994809, at *2 (W.D. Tex. Dec. 7, 2021), which involved different patents and different evidence. But, as Roku recognizes, each case requires an individualized analysis. Mot. at 6; *see also Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (section 1404 transfers require "individualized, case-by-case consideration of convenience and fairness"). And *Media Chain* predates the Fifth Circuit's recent guidance in *Defense Distributed* (2022), *TikTok* (2023)*, and *Clarke* (2024).

In *Defense Distributed*, the Fifth Circuit held that a movant cannot establish "good cause" merely by arguing that evidence "likely" exists in the defendant's venue. 30 F.4th at 434 ("Regarding the first private interest factor, the movant has the burden to establish good cause, which requires an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum."); *see also TikTok*, 85 F.4th at 358 (electronic evidence with equal access in either forum bears less on transfer analysis). Yet that

is all Roku did in its motion. Mot. at 6-7 (arguing that "technical documents and source code related to the accused ACR technology are *generally* created and maintained by the engineers that work on the ACR technology who, as discussed, are based at Roku headquarters in San Jose and in Seoul, Korea.") (emphasis added). And now, all Roku witnesses have admitted that all these source code and technical documents are equally accessible from WDTX.[1]

In summary, because Roku does not identify any specific document or physical evidence that is more accessible in NDCA than it is in WDTX, this factor cannot weigh in favor of transfer. *See Defense Distributed*, 30 F.4th at 434 ("When there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer."). If anything, based on the facts uncovered during venue discovery, this factor should weigh against transfer because there is evidence accessible in WDTX that is not accessible in NDCA and evidence easier to access from Texas than California.

## 2. The availability of compulsory process weighs against transfer because two former Roku employees with particularly relevant knowledge are subject to subpoena power in WDTX.

The second private interest factor analyzes whether either venue has subpoena power to compel the attendance of witnesses. But when the movant does not allege or show that a relevant witness is unwilling to testify and only subject to subpoena power in the transferee venue, this factor carries less weight. *See In re TikTok*, 85 F.4th at 360 (citing *Planned Parenthood*, 52 F.4th at 630-31); *see also Turner v. Cincinnati Ins. Co.*, No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020).

---

[1]       Roku's argument that an IT group that oversees litigation discovery is located in San Jose (Mt. at 7) is irrelevant. ████████████████████████████████████████████████████████████████████████████████████████████ Ex. 3 at 7; Ex. 15 at 4 (confirming that all three "us-east1" zones are in South Carolina).

Roku claims that two named inventors on a Shazam patent application (Avery Wang and Julius Smith) are "significant" prior art witnesses subject to subpoena power in NDCA. Mot. at 8. But Roku did not identify this Shazam patent application referenced in its transfer motion as prior art in any of its six invalidity counterclaims. *See* Dkt. 15 ¶¶ AA, MM, YY, KKK, WWW, IIII (identifying prior art); *compare with* Dkt. 19-6 (App No. 2022/0083060). Indeed, Roku's own Initial Disclosures does not list any other inventor of prior art as relevant witnesses. *See* Ex. 12 at 3-4; *compare with* Exhs. 27–33 (references cited in Roku's Invalidity Counterclaims). In other words, Roku does not actually intend to call witnesses to testify because they are listed as inventors of putative prior art. Plus, neither Wang nor Smith has any substantive fact knowledge relevant to this case. Ex. 14, Otto Decl., ¶¶ 4-5. Roku then argues that a company named Audible Magic is also based in Los Gatos, CA and is a "significant source" of prior art. Mot. at 8. But Roku does not identify any *human beings* associated with Audible Magic that would serve as trial witnesses and are subject to subpoena power in NDCA. *See* Mot. at 8-9.

By contrast, two former Roku employees with relevant, personal knowledge are subject to subpoena power in WDTX and likely to be called at trial: ███████████████

███████████████████████████████████████████████

████████████████████████████████████████████. Because the statute of limitations for patent infringement is six years, Anonymous Media can pursue infringement claims and damages dating back to 2017. Unlike the witnesses Roku has identified, who only joined after the 2021 Nielsen acquisition, █████ can testify about technical ACR work Roku did *before* the Nielsen acquisition but during the statutory infringement period.

████████████████████████████████████████████

██████████████████████████████████. Ex. 3 at 9. Thus, ██████ would know how

Roku used and benefited from its ACR capabilities in a unique manner (OS software licensing). ███████████████████████████████████████████████████, he is still subject to subpoena power in WDTX (but not NDCA). Ex. 4.

Thus, there are at least two relevant witnesses subject to subpoena power in WDTX that are not subject to subpoena power in NDCA. *Contra Media Chain*, 2021 WL 5994809, at *2 (movant identified several third-party witnesses, including two channel partners, in NDCA, which non-movant did not dispute, and there was only one "potential witness" from Austin); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1999 (Fed. Cir. 2009) (in which no identified witnesses lived in Texas). This factor weighs against transfer.

### 3. The cost of attendance for willing witnesses weighs against transfer when the Court considers all relevant witnesses.

In *TikTok*, the Fifth Circuit reaffirmed its "100-mile test," which treats the inconvenience to witnesses as increasing in a direct and linear relationship to additional travel distance when there is more than 100 miles between existing and proposed venues. 85 F.4th at 361.

Roku claims that NDCA is "clearly more convenient" for two Roku witnesses based in Korea and for De Bel Air and Shashank Merchant, who are based in San Jose. Mot. at 10. The two individuals in Korea are Charles Seo and Yongjoo Hong. But Roku's declarant is silent as to what specific knowledge Seo or Hong has that makes them relevant. Dkt. 19-15 ¶ 15. Indeed, ███████████ ██████████████████████████████████████, Ex. 11 at 8-9, and Roku has not explained why these lower-level employees must testify instead of, or in addition to, Merchant.

While De Bel Air and Merchant will have to travel from NDCA to WDTX for trial, the opposite is true for witnesses in WDTX that will have to travel to NDCA for trial, including Mandrusiak, De Haas, McFarland, and either of Karrar or Palanivelu. If either ███████████ are

willing witnesses, the same would apply to them. If neither is a willing witness, the NDCA court will not be able to compel their attendance.

Moreover, for the witnesses in the UK, New York, and Boston, NDCA is not "clearly more convenient" under the 100-mile rule (WDTX is):

- ████████████████ in the UK who is listed as an inventor on numerous Roku and Nielsen ACR patents.

- ████████████████████████████████████████████ ████████████████████████████████████████

- Jonathan Steuer in New York, one of the principals of Anonymous Media and named inventor on the Asserted Patents.

- Michael Mauriel in New York, the patent prosecutor for Anonymous Media.

- New York witnesses with relevant knowledge about Anonymous Media's development and attempted commercialization of its Asserted Patents: Mike Pears, Rolfe Swinton, and Ozer Teitelbaum.

- ████████████████████████, the Roku executives in New York who led the 2021 Nielsen acquisition.

- ████████████ in New York, who manages the team in Korea that handles various ACR tasks.

- ████████████ in New York, who entered into ████████████████████ ████████████████████

- ████████████████████████████████████████████ ████████████████████████████████████

- At least some of the following New York or Boston witnesses who work on ████████ ████████████████████████ which would involve the Accused ACR instrumentalities, and related marketing and commercialization efforts: ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████

Finally, a global point regarding the Court's consideration of the evidence concerning the relevance of witnesses: the Court should discount at least some of Roku's evidence as unreliable because Roku's declarant failed to fully investigate individuals that would have relevant knowledge

and instead cherry-picked certain witnesses based on her own highly constrained view of the issues. De Bel Air has not ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████.[2] Ex. 1 at 102:19-21, 78:3-6, 72:10-73:20.

Critically, ███████████████████████████████████████████

██████████████████ *Id.* at 73:21-74:6 (███████████████████████

████████████████████████████████████████████████████

████████████████████). But how Roku *uses* ACR data is the crux of this case. The Asserted Patents cover inventions that solve problems on top of commodity ACR data. Compl. ¶¶ 14-22; Ex. 22, Steuer Depo., at 50:17-51:1 (explaining base ACR was "a commodity product" and "the focus of [Anonymous Media]'s invention was on ***the use of that***").

What is more, Roku's evidence contains internal inconsistencies, which should cause the Court to give less weight to Roku's assertions.

For example, Roku stated in discovery that, since ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[2]      Unsurprisingly, because De Bel Air works in San Jose, her focus on who she works with most slanted the evidence toward Roku's preferred venue.

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

The Court can and should weigh these numerous inconsistencies against Roku. *Rafqa Star*, 2023 WL 6050593, at *1.

In summary, when the Court considers all the evidence and gives it its due weight, this factor weighs against transfer. This case involves witnesses dispersed across multiple states and continents, and Roku has not shown that NDCA is "clearly more convenient" for most of these witnesses than WDTX. Instead, Roku simply ignored any witnesses that did not support its transfer argument and hoped the Court would do the same.

**4. There are no practical problems, so this factor is neutral.**

The fourth private interest factor requires the Court to consider all other practical problems that make trial of a case easy, expeditious and inexpensive in either venue. *Volkswagen*, 545 F.3d at 314. Roku claims this factor favors transfer because it is headquartered in NDCA and this case is still in its early stages. Mot. at 12.

As to the first point, while Roku may still be technically headquartered in San Jose, it has been downsizing its office space there, including listing half of its campus for lease, and has laid off hundreds of its San Jose-based employees. *See* Ex. 16 at 2, 4; Ex. 17 at 2. At the same time, Roku has spent millions of dollars building out thousands of square feet in its Austin office. Ex. 18 at 7, 9, 11. Thus, this case is unlike *Jones v. Angelo State University*, cited by Roku, in which the court transferred a discrimination lawsuit from the Austin Division of WDTX where the defendant university had no presence whatsoever. No. A-09-CA-652-SS, 2009 WL 10699928, at *5 ("It is undisputed ASU's principal and sole place of business is in San Angelo.").[3]

As to the second point (early stages), Roku cites no case where this factor supported transfer when no other private-interest factor did. *See Media Chain*, 2022 WL 5994809, at *2-3 (first three private-interest factors already favored transfer); *Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-cv-00432-ADA, 6:19-cv-00437-ADA, 2020 WL 4905809, at *6-7 (W.D. Tex. Aug. 20, 2020) (finding this factor weighed in favor of transfer when two other private-interest factors favored transfer). That absence of support is unsurprising. If the proposed venue is not more convenient for the evidence and witnesses, then it makes no difference that a case is in early stages because it is not more convenient to litigate the remainder of the case in the proposed venue. Here, not one of the

---

[3]    *Jones* involves a unique procedural history that impacted the transfer analysis. The employment-discrimination plaintiff had originally filed his lawsuit in the San Angelo Division of NDTX, but voluntarily nonsuited after certain federal claims were dismissed and refiled Travis County, where the defendant removed the case to WDTX. 2009 WL 10699928 at *4.

other private-interest factors weighs in favor of transfer, and so this "practical problems" factor cannot weigh in favor of transfer on its own.

Thus, this factor is neutral and cannot support transfer. *Defense Distributed*, 30 F.4th at 434.

**III.   The public-interest factors do not support transfer because they are all neutral.**

**1.   Under Federal Circuit law, administrative difficulties from court congestion are neutral in the case of a non-practicing entity like Anonymous Media.**

Roku claims that the first private interest factor slightly favors transfer or is neutral. This factor is neutral based on this Court's own recent reasoning and the Federal Circuit's guidance in *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Roku cites this Court's recent observation that while WDTX has a slightly faster time to trial than NDCA, it has a particularly heavy caseload in Austin, making this factor neutral. Mot. at 15 (*Yeti Coolers, LLC v. Love Deals Inc.*, No. 1:23-cv-79-RP, 2023 WL 4754479, at *7 (W.D. Tex. July 24, 2023)). The fact that this case sits on the docket of a vacant judgeship is irrelevant because the Federal Circuit has held that when a patent-infringement case involves a non-practicing entity plaintiff, like Anonymous Media here, that is not engaged in product competition in the marketplace, "it [is] a clear abuse of discretion" to afford this factor any weight in the transfer analysis; instead, this factor must be treated as neutral. *In re Google*, 58 F.4th at 1383.

**2.   The local interest in having localized interests decided at home is neutral.**

Roku argues that the second private interest factor "strongly favors transfer" because it is headquartered in NDCA and that is "one of the places where the accused ACR was developed." Mot. at 13. In the same motion, however, Roku claims that the accused ACR technology was developed in Korea by Enswers prior to 2015. Mot. at 2. If the Court took Roku's statement as true, the infringing technology was developed in a foreign country, such that neither the citizens of NDCA or WDTX "can fairly be said to have a strong interest in this dispute." *In re TikTok*, 85 F.4th

at 364-65. Roku's decision to acquire Enswers' ultimate successor entity—Nielsen's Advanced Video Advertising business—was handled by two New York executives, not anyone in NDCA.

In any event, Roku's presence in Austin, Texas has significant relationships to the events giving rise to this lawsuit and creates a local interest in WDTX that rivals any local interest in NDCA. *See In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). Unlike in *Apple* where "the accused products were designed, developed, and tested in NDCA," *id.*, the Accused ACR Instrumentalities were subject to development and testing by engineers in WDTX, like Messrs. Karrar and Palanivelu and former Roku employee ███. Moreover, Roku conducts ███ ███████████████████████████████████████████████████████████████ ███████████████████ Finally, Ms. Mandrusiak, a key witness on Roku's knowledge of Anonymous Media's patents before the lawsuit and whether Roku *willfully* infringed, is also in Austin. *See SynKloud Technologies*, 2020 WL 2494574, at *6 (finding this factor neutral when Dropbox had presence in both NDCA and WDTX with relevant employees in both offices). Because this suit "calls into question the work and reputation of several individuals residing" in WDTX—as well as in NDCA, New York, Cardiff, Boston, and Korea—this factor is neutral. *See Apple*, 979 F.3d at 1345; *SynKloud Technologies*, 2020 WL 2494574, at *6.

### 3. The familiarity of the forum with the governing law and avoidance of unnecessary conflicts of laws or application of foreign law are both neutral.

Roku concedes the last two public-interest factors are neutral and Anonymous Media agrees.

#### CONCLUSION

Not one private-interest or public-interest factor weighs in favor of transfer; instead, they are each neutral or weigh against transfer. Therefore, the Court should deny Roku's motion to transfer venue because Roku has not "clearly established" that NDCA is "clearly more convenient" than WDTX, as required under Fifth Circuit law. *In re Clarke*, 94 F.4th at 508.

Dated: May 31, 2024        Respectfully submitted,

*/s/ Jason McManis*

Jason S. McManis
State Bar No.: 24088032
Weining Bai
State Bar No.: 24101477
Louis Liao
State Bar No.: 24109471
Chun Deng
State Bar No.: 24133178
Enes Ovcina
State Bar No.: 24134177
Sujeeth Rajavolu
State Bar No.: 24127961
Hailey Pulman
State Bar No.: 24121469
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
wbai@azalaw.com
lliao@azalaw.com
cdeng@azalaw.com
eovcina@azalaw.com
srajavolu@azalaw.com
hpulman@azalaw.com

*Of Counsel:*

Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
Tel: 903-757-6400
Fax: 903-757-2323

***Attorneys for Plaintiff***
**Anonymous Media Research Holdings, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record as indicated below on May 31, 2024.

21

*/s/ Jason S. McManis*
Jason S. McManis

**By E-mail**

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Patrick J. McKeever (Pro Hac Vice)
PMcKeever@perkinscoie.com
Ji Wang, CA Bar No. 345211
JiWang@perkinscoie.com
**PERKINS COIE LLP**
11452 El Camino Real, Ste 300
San Diego, California 92130-2080

Maria A. Stubbings (Pro Hac Vice)
MStubbings@perkinscoie.com
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, DC 20005

**ATTORNEY FOR DEFENDANTS**