# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ANONYMOUS RESEARCH HOLDINGS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>ROKU, INC.,<br><br>                Defendant. | **Case No. 1:23-cv-01143-DII**<br><br>JURY TRIAL DEMANDED |

**DEFENDANT ROKU, INC.'S REPLY IN SUPPORT OF ITS
<u>MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

Table of Transfer Factors………………………………………………………………………iii

1. Willing witnesses would bear fewer costs in NDCA than in WDTX..............................1

2. The NDCA can compel relevant non-party testimony; WDTX cannot..........................7

3. The primary sources of proof are centered in NDCA; no relevant proof is in WDTX. ...................................................................................8

4. NDCA has a strong local interest in this suit. ................................................................9

5. AMRH's attempts to discredit Roku are unfounded......................................................10

# TABLE OF AUTHORITIES

**CASES**

*Def. Distributed v. Bruck*,
    30 F.4th 414 (5th Cir. 2022) ...................................................................................................9

*iCharts LLC v. Tableau Software, LLC*,
    No. 1:23-CV-1225-DII, 2024 WL 2305214
    (W.D. Tex. May 21, 2024) ............................................................................................2, 4, 5

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ............................................................................................8, 9

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .....................................................7

*In re Apple Inc.*,
    No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ............................................5, 6, 7

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ................................................................................................10

*In re Google*,
    2021 WL 4427899 ..................................................................................................................5

*In re Google LLC*,
    No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ..............................................8, 9

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ..................................................................................................9

*Media Chain, LLC v. Roku, Inc.*,
    No. 1:21-CV-27-LY, 2021 WL 5994809 (W.D. Tex. Dec. 7, 2021) .........................................4

*Mobile Data Techs. LLC v. Meta Platforms, Inc.*,
    No. 7:22-CV-00244-ADA-DTG, 2023 WL 9051280
    (W.D. Tex. Dec. 18, 2023) ..................................................................................................5, 8

*Safecast Ltd. v. Google LLC*,
    No. W-22-CV-00678-ADA,
    2023 WL 4277349 (W.D. Tex. June 28, 2023) .......................................................................8

*Surfcast, Inc. v. Microsoft Corp.*,
    6:21-cv-01018-ADA, 2022 WL 4360591 (W.D. Tex. Sept. 20, 2022) .....................................4

*Umbra Techs. Ltd. v. VMware, Inc.*,
    No. 1:23-CV-904-DII, 2024 WL 1123592 (W.D. Tex. Mar. 13, 2024) ..............................4, 10

**TABLE OF TRANSFER FACTORS**

| Factor | Roku | AMRH |
|---|---|---|
| *Private Factors* | | |
| Relative ease of access to sources of proof | Strongly favors transfer | Neutral or against transfer |
| Availability of compulsory process to secure the attendance of witnesses | Strongly favors transfer | Against transfer |
| Cost of attendance for willing witnesses | Strongly favors transfer | Against transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Favors transfer | Neutral |
| *Public Factors* | | |
| Administrative difficulties flowing from court congestion | Slightly favors transfer or neutral | Neutral |
| Local interests in having this case decided at home | Strongly favors transfer | Neutral |
| Familiarity of the forum with the law that will govern the case | Neutral | Neutral |
| Avoidance of unnecessary problems of conflict of laws or the application of foreign law | Neutral | Neutral |

NDCA—not WDTX—is the clearly more convenient forum for this case. The key witnesses and teams responsible for the research, design, development, and commercial use of the accused functionalities reside in NDCA and Korea. NDCA is also the home of one of the two patent co-inventors and co-founder of AMRH—a key witness on the development and attempted commercialization of AMRH's inventions. To manipulate venue, AMRH compiles a long list of purported witnesses plainly based on their residing in (or even just marginally closer to) WDTX. But months of venue discovery only confirmed that these individuals were not involved in developing the accused functionality, are (at best) tangential to the actual issues in this case, and are unlikely to ever testify. This case has no material connections to WDTX, and thus NDCA is clearly more convenient.

1.      **Willing witnesses would bear fewer costs in NDCA than in WDTX.**

This factor <u>strongly favors transfer</u> because nearly all relevant witnesses are in NDCA.

**The witnesses in NDCA and Korea are highly relevant and likely to testify.** Roku's most important witnesses for the research, design, and development, and commercialization of the accused functionalities (processing audio content recognition (ACR) identification data output by core ACR technology) are located in NDCA. AMRH does not and cannot deny this, because <u>Virginie Debelair</u> is the Product "Directly Responsible Individual" (DRI), <u>Shashank Merchant</u> is the Engineering DRI at Roku for all matters related to ACR technology, and <u>Louqman Parampath</u>, Roku's VP of Product Management—Advertising, are all based in San Jose. McKeever Decl., Ex. N (Debelair Tr.) at 9:14–20, 18:3–8; Debelair Supp. Decl. ¶ 8; Merchant Decl. ¶¶ 4–5; ECF No. 19-15 ¶ 15, 18. AMRH has not disputed that these three witnesses are highly relevant and likely to testify at trial.

AMRH characterizes the patents as relating to post-processing of "dirty" ACR data (Opp'n at 2–3), which highlights the relevance of additional NDCA witnesses: San Jose-based <u>Karthik Rangappa</u> and his team are responsible for ACR post-processing. Merchant Decl. ¶ 6; Debelair Supp. Decl. ¶ 12; McKeever Decl., Ex. N (Debelair Tr.) at 18:7–20. Before the 2021 Nielsen

acquisition, Gracenote post-processed Roku's ACR data. Merchant Decl. ¶ 9. Several of the Gracenote employees that worked on post-processing (including Mr. Rangappa) joined Roku in San Jose and still work there. *Id*. In contrast, none of the individuals AMRH identifies in Austin or elsewhere have any connection whatsoever to ACR data post-processing. The quality assurance (QA) testing performed by the Austin engineers AMRH tries to rely on does not relate to the post-processing software, making this testing and these witnesses irrelevant. Debelair Supp. Decl. ¶ 11.

With respect to AMRH's witnesses, co-inventor and AMRH co-founder Christopher Otto lives in San Francisco. McKeever Decl. Ex. O (Otto Tr.) 10:25–11:12. He was the technical lead during development of the inventions and AMRH does not dispute that he is a key witness certain to testify. *Id*. at 15:8–20, Ex. P (Steuer Tr.) 67:6–11; 79:4–21; Ex. Q (Otto CV).

Roku also identified two key technical witnesses in Seoul, Korea—Charles Seo and Yongjoo Hong, the engineers most knowledgeable about Roku's ACR content-fingerprinting and content-matching technologies. Mot. at 3; ECF No. 56-3 at 15. AMRH does not dispute that NDCA would also be clearly more convenient for these witnesses. Instead, it erroneously complains that Ms. Debelair was "silent" about their relevant knowledge, despite her explanation that they "worked at Enswers prior to joining Roku and were involved in the initial development of the ACR technology." ECF No. 19-15 ¶¶ 11, 15–16; *see also* ECF No. 56-1 at 72:17–24. These two witnesses thus have highly relevant information, that is nonduplicative of Mr. Merchant's knowledge, about how the accused content fingerprinting technology that was incorporated into Gracenote's ACR technology was originally developed.

To the extent other Roku witnesses would be needed to testify about the accused functionalities, those witnesses would be based in San Jose or Seoul, for which NDCA would be clearly more convenient. ECF No. 19-15 ¶¶ 14, 16; ECF No. 56-3 at 15; ECF No. 56-11 at 8–10.

Because "patent cases usually focus on the activities of the alleged infringer," Roku's contention that its identified NDCA and Seoul employees are most knowledgeable about the accused functionalities should be considered "especially weighty." *iCharts LLC v. Tableau Software, LLC*, No. 1:23-CV-1225-DII, 2024 WL 2305214, at *12 (W.D. Tex. May 21, 2024).

**AMRH's attempts to discredit Roku's declarant are unfounded.** After cross-examining Ms. Debelair on Roku's use of ACR technology and the teams and personnel supporting Roku's ACR technology and advertising business, AMRH could muster no legitimate fault or inconsistency in her testimony. So, AMRH resorts to half-truths to suggest that Ms. Debelair's knowledge was incomplete. AMRH suggests that she could not have identified relevant witnesses without reading the asserted patents, Opp'n at 4, 16, but Ms. Debelair explained in her declaration that she "was advised that Plaintiff's infringement contentions focus on Roku's use of ACR technology and processing of data obtained using ACR." ECF No. 19-15 ¶ 5. AMRH also wrongly suggests that Ms. Debelair lacks knowledge of Roku's use of ACR technology prior to April 2021. Opp'n at 4. On the contrary, Ms. Debelair testified about how she worked closely with Roku engineers in 2016 and 2017 to assist them with integrating Gracenote's ACR technology into the Roku platform. McKeever Decl. Ex. N (Debelair Tr.) at 35:22–37:16; Debelair Supp. Decl. ¶ 5; Baharloo Decl. ¶ 5. Given her position as the Product DRI for ACR at Roku for the last three years and direct involvement in ACR development and integration prior to that, she was easily able to identify the relevant witnesses. Debelair Supp. Decl. ¶¶ 8–9; ECF No. 56-1 at 72:17–73:2; McKeever Decl. Ex. N (Debelair Tr.) at 77:16–25.

Finally, AMRH tries to fault Ms. Debelair for supposedly omitting witnesses whose work "consumes ACR," arguing that "how Roku uses ACR data is the crux of this case." Opp'n at 16. But AMRH concedes *post-processing* ACR data is the focus of the claims. *See* Opp'n 2–3 (citing Compl. ¶¶ 20–22). "Consuming" or using post-processed ACR data downstream has nothing to do with infringement. Ms. Debelair's declaration focused on key witnesses knowledgeable about the accused ACR technology and its relation to Roku's advertising business. But she did not include every employee whose work has any attenuated connection to ACR, because those employees are so tangential to the relevant issues in this case that they simply will not be witnesses at trial. *See, e.g.*, McKeever Decl. Ex. N (Debelair Tr.) at 71:5–6; Debelair Supp. Decl. ¶ 11.

**AMRH fails to identify any legitimate willing witness in WDTX likely to testify.** AMRH transparently "attempts to manufacture venue convenience by presenting individuals of

tenuous relevance in Texas." *Surfcast, Inc. v. Microsoft Corp.*, 6:21-cv-01018-ADA, 2022 WL 4360591, *4 (W.D. Tex. Sept. 20, 2022). But AMRH's unlikely witnesses should not factor into the transfer analysis. *See id.* at *6; *see also, e.g., iCharts,* 2024 WL 2305214, at *12 ("iCharts's identification of seemingly random employees … and speculation as to what knowledge they have does not overcome the representations that Tableau has made regarding which employees will be most knowledgeable and most relevant in this case."); *Umbra Techs. Ltd. v. VMware, Inc*., No. 1:23-CV-904-DII, 2024 WL 1123592, at *4 (W.D. Tex. Mar. 13, 2024) (weighing the cost of attendance factor "strongly in favor of transfer" where there was "no reason to think that the VMware witnesses in this district that UMBRA identifies will provide any relevant testimony").

AMRH makes no attempt to connect Scott de Haas to the accused technology or any other issues in this case. It relies on a declaration from another case, involving different products and technology, to state that he is "familiar" with a broad range of topics generically related to Roku's "products," and inexplicably concludes that he would be a witness in this case. Opp'n at 4, 14. There is no support for that speculation. *See Media Chain, LLC v. Roku, Inc.*, No. 1:21-CV-27-LY, 2021 WL 5994809, at *2 (W.D. Tex. Dec. 7, 2021) (noting "there is no special connection between de Haas and the [alleged] infringement of the Asserted Patents"). Similarly, AMRH says that Tom McFarland "has a role" in licensing Roku's "Smart TV software." *Id*. But Mr. McFarland explained that ACR technology has never come up in connection with licensing Roku's software to its OEM partners. McFarland Decl. ¶ 6. These potential witnesses should be afforded no weight.

AMRH also speculates that Lisa Mandrusiak "will be a key witness on willful infringement," because Ms. Mandrusiak had access to an AMRH claim chart. Opp'n at 5 (citing ECF No. 56-5 at 2). As Roku's in-house counsel responsible for Roku's defense of this litigation, it is highly unlikely Ms. Mandrusiak would testify. AMRH neglects to mention that other Roku lawyers including Joe Hollinger in NDCA were also involved in the (limited) communications with Ocean Tomo (ECF No. 56-5), and had access to the same claim chart. Mr. Hollinger could testify in the extremely unlikely event Roku needed a witness on this subject.

AMRH also claims Muhammad Karrar and/or Siva Palanivelu is likely to testify. Opp'n at 14. These two Austin-based engineers joined Roku in 2022 and performed some QA testing on ACR before moving on to other roles when testing transitioned to the engineering team in Korea. ECF No. 19-15 ¶ 17. They have no other connection to ACR technology.[1] *Id*. Moreover, the testing had nothing to do with post-processing ACR data—which AMRH contends is the focus of the Asserted Patents. Debelair Supp. Decl. ¶ 11. AMRH does not (and cannot) explain how the testing has any relevance to its infringement allegations, and its assertions should carry no weight.

To compensate for the dearth of genuinely relevant witnesses in WDTX, AMRH turns to a hodgepodge of individuals tenuously connected to ACR technology or this case. None live anywhere near this District, and because they will expend significant time to travel a significant distance to either venue, any difference in inconvenience is marginal and should carry limited, if any, weight. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *3 (Fed. Cir. Apr. 22, 2022).[2]

Roku's employees in Cardiff, United Kingdom previously worked on Dynamic Linear Ads (DLA), a now-retired feature that only relied on ACR to identify advertisements for potential replacement.[3] Despite AMRH's mischaracterizations, Steve Cormie testified that he "ha[s] not worked directly on ACR," and instead, "Shashank Merchant was responsible for anything to do with ACR [engineering]." McKeever Ex. R (Cormie Tr.) at 38:25–39:1, 36:11–17. Mr. Cormie signed off on test plans, *id*. at 31:23–32:22, but as discussed above, AMRH has failed to show how QA testing relates to its infringement claims. Matthew Grover has never worked on Roku's ACR

---

[1] Roku's statement that Mr. Karrar's own work on Ad Insights and Measurement Tools "does not implicate ACR in any way," ECF No. 56-11 at 2, is not, as AMRH argues (Opp'n at 16–17), inconsistent with Ms. Debelair's testimony because it encompasses numerous products that do not use ACR. ECF No. 56-1 85:9–87:4.

[2] *In re Google*, 2021 WL 4427899, at *4; *iCharts,* 2024 WL 2305214, at *12; *Mobile Data Techs. LLC v. Meta Platforms, Inc.*, No. 7:22-CV-00244-ADA-DTG, 2023 WL 9051280, at *2 (W.D. Tex. Dec. 18, 2023)

[3] Tellingly, AMRH cannot and has not accused DLA of infringing because its patents relate to ACR data processing, not ad replacement. McKeever Decl. ¶ 8, Ex. N (Debelair Tr.) at 55:13–57:24; Ex. R (Cormie Tr.) at 37:10–41:14.

technology, which was initially developed by Gracenote, not Sorenson Media where Mr. Grover previously worked. *Id.* at 67:20–68:8; 44:1–45:7. Thus, Mr. Grover's ACR-related patents are another red herring—they are not related to the ACR technology Roku uses (and were notably filed years before he joined Roku). McKeever Decl. ¶ 8. Mr. Grover's knowledge of the state of the prior art would be duplicative of that of other Roku witnesses like Ms. Debelair and Mr. Merchant. In any event, travel times from Cardiff to Austin often exceed the travel times to San Francisco (with more expensive flights), rendering NDCA no more inconvenient for these witnesses than WDTX. *Compare* McKeever Decl. Ex. S (Cardiff to Austin flights) *with id.* Ex. T (Cardiff to San Francisco flights).

Most of the individuals AMRH identified in New York and Boston lack a material or unique connection to the accused technology. A number of identified Roku witnesses (*e.g.,* Scott Lowry,[4] Youseff Ben Youseff, Courtney Kundtz, John Taveras, Jason Schifrien, Mark Matarazzo, Kiley Jarymiszyn, Naomi Pollack, Sachin Doiphode, Jonathan Faubert, Varun Himanshu, and Ziggy Zografakis, Gil Fuchsberg, Sean Donohue, and Scott Rosenberg) do not work on the ACR technology but have roles related to Roku's advertising business, which is tangential to this patent infringement dispute. AMRH provides no factual support for asserting they have "intimate" and "extensive" knowledge related to ACR and advertising. Opp'n at 7–8. In truth, their knowledge would be duplicative or less extensive than that of Ms. Debelair who testified for hours in detail about ACR and advertising at Roku, and Mr. Parampath, Roku's most knowledgeable witness about the intersection of the accused ACR technology and Roku's advertising business. ECF No. 19-15 ¶ 18; ECF No. 56-3 at 21. AMRH also mentions New York-based witnesses who may know about AMRH's attempts to sell its patents including through Ocean Tomo. But Mr. Otto is sufficiently knowledgeable about these fruitless monetization efforts to address this topic. McKeever Decl. Ex. P (Steuer Tr.) at 100:14–20.

---

[4] AMRH misrepresents Mr. Lowry's role. *See* Opp'n at 7. He is not responsible for the team of 21 Roku engineers in Seoul who work directly on Roku's ACR technology. *See* ECF No. 56-11 at 8–11. Mr. Merchant is responsible for that team. Merchant Decl. ¶ 7.

**2.      The NDCA can compel relevant non-party testimony; WDTX cannot.**

This factor <u>strongly favors transfer</u> because only NDCA can compel critical testimony.

**Important non-party prior art witnesses are located in NDCA.** AMRH cannot credibly dispute that Cupertino's *Apple, Inc.*, and NDCA-based witnesses *Avery Wang* and *Julius Smith* possess prior art evidence related to Shazam Entertainment, which is named in all six asserted patents as a prior art developer of ACR technology. Roku intends to include Shazam prior art in its invalidity contentions. McKeever Decl. ¶ 11. AMRH also does not dispute that *Audible Magic*, based in Los Gatos, California, is a key source of prior art testimony. AMRH quibbles that Roku did not identify specific individuals at Audible Magic, Opp'n at 13, but it is improper to "discount" third-party entities having pertinent information in the transferee venue "just because individual employees were not identified." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804 at *3 (Fed. Cir. Nov. 15, 2021) (quoting *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020)).

**AMRH cannot contrive relevance to establish compulsory process in WDTX.** Neither of the two former Roku employees AMRH identifies in WDTX have relevant or unique knowledge, and it is unlikely that anyone will seek to compel them to testify in this case. Michael Veach was involved in QA testing of ACR-related technology six or seven years ago, ECF No. 56-3 at 16, but AMRH fails to show how testing is relevant to the infringement claims or why this case would require four witnesses to testify about it. Mr. Veach also does not have unique knowledge of "Roku's internal technical work on ACR and processing of ACR data" from 2016. For example, Ms. Debelair explained that in 2016–17, Mr. Parampath (and later *Anvesh Junnuthula*) led product and *Cameron Baharloo* led engineering on Roku's side of the integration. McKeever Decl. Ex. N (Debelair Tr.) at 35:14–37:18. All three are based in San Jose and would be more likely to testify than Mr. Veach, whose involvement was limited to testing performed in 2017 and 2018 that had nothing to do with post-processing ACR data. *Id.* at 36:7–14, 37:8–15; Debelair Supp. Decl. ¶¶ 6, 11; Baharloo Decl. ¶¶ 2, 7. *Rama Kalluri* and *Arno Glim* were the main engineers for Roku on the OS side during the integration and would also have more relevant information than Mr. Veach. Mr. Kalluri and Mr. Glim have left Roku but remain in the San

Francisco Bay Area, subject to compulsory process in NDCA. Baharloo Decl. ¶ 6. Additionally, <u>Raghavendra Sunku</u> managed the post-processing team at Gracenote and then at Roku and still resides in NDCA. Merchant Decl. ¶ 9. Mr. Sunku is also far more relevant than Mr. Veach.

Joel Teklu provided legal advice on Roku's global business relationships and support through legal agreements. ECF No. 56-3 at 9–10. As with Tom McFarland, AMRH speculates that Mr. Teklu is relevant based on his involvement in licensing the Roku OS. But, again, ACR technology has never come up during that licensing activity. McFarland Decl. ¶ 6. Further, since Mr. Teklu's departure, <u>Tom Lee</u> and <u>David Wang</u>, both based in California, have taken over Mr. Teklu's responsibilities and could provide licensing testimony if necessary. ECF No. 56-3 at 9.

3.  **The primary sources of proof are centered in NDCA; no relevant proof is in WDTX.**

    This factor <u>strongly favors transfer</u> because nearly all sources of proof are in NDCA.

    **Most documents were created and are maintained by custodians in NDCA and Korea.** AMRH does not dispute that even if the evidence is electronic, nearly all of the document custodians from both parties are located in NDCA and Korea, where the documents were created and are maintained, weighing in favor of transfer. *Safecast Ltd. v. Google LLC*, No. W-22-CV-00678-ADA, 2023 WL 4277349, at *3 (W.D. Tex. June 28, 2023) (document custodians located in NDCA favored transfer); *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (Because "the bulk of the relevant evidence usually comes from the accused infringer" in patent infringement cases, "the place where the defendant's documents are kept weighs in favor of transfer to that location."); *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). There is also no dispute that Roku's "Trust Engineering" team that manages source code inspection is based in NDCA. AMRH argues that this is "irrelevant," Opp'n at 12 n.1, but AMRH is wrong—this fact weighs toward transfer. *See Mobile Data Techs.,* 2023 WL 9051280, at *2 (sources of proof favored transfer because document custodians and source code control team were located in NDCA). AMRH also points to a hard drive with unspecified "server data" that it claims must be inspected in New York. Opp'n at 11. AMRH never even mentioned this hard drive in responding to Roku's

venue RFP concerning documents related to prototypes. McKeever Decl. Ex. U at 8 (response to RFP 8). Nor does AMRH explain why the hard drive cannot be imaged (particularly if relevant data is at risk of loss) and that data—which is electronic—accessed from NDCA. Regardless, unspecified data of dubious significance located far from either venue does not outweigh the fact that all of the evidence related to the accused functionalities is more easily accessed from NDCA.

**There are no relevant sources of proof in WDTX.** There is no evidence from either party that is more easily accessed from this District, a fact that also weighs in favor of transfer. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). Hoping to make a mountain of a molehill, AMRH argues that QA "test logs" are "only locally accessible" in Austin. Opp'n at 11. Not only does AMRH fail to show that old test logs have any relevance to the issues (which it cannot, as they do not relate to ACR data post-processing), but it mischaracterizes their accessibility. Mr. Palanivelu explained that, during testing, a TV would generate logs and he would view the logs from his local system. McKeever Decl. Ex. V (Palanivelu Tr.) at 48:15–24; 49:7–16. Far from suggesting the logs are only accessible in Austin, he explained that the logs are "not confined to a location" and that he did not have to hookup his computer to the TV to view them. *Id.* at 86:6–87:8. He further testified that important log data is saved to a remotely accessible database, but other logs may not be saved at all. *Id.* at 70:6–11. He never suggested the logs generated during testing he performed last year would still be present on the TVs, or even that the TVs are still Austin despite testing responsibilities shifting to Korea (*see* ECF No. 19-15 ¶ 17). He also clarified that the referenced logs relate to manual testing, while automated testing of ACR technology is conducted remotely and relies on a lab physically located in San Jose. *Id*. at 61:22–24, 84:3-86:1.

## 4.     NDCA has a strong local interest in this suit.

This factor <u>strongly favors transfer</u> NDCA is where Roku is headquartered and where dozens of engineers at Gracenote, Nielsen, and Roku developed the accused ACR technology. That makes NDCA the substantive locus of this patent infringement dispute. *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022); *Apple*, 979 F.3d at 1345; *Google*, 2021 WL 5292267 at *2.

AMRH grossly exaggerates the import of its cherry-picked group of Austin-based individuals. Some were involved in irrelevant QA testing during certain discrete time periods, but that is not development work. Others were involved in licensing that never discussed ACR technology. The majority of Roku employees relevant to pre-suit knowledge are located in NDCA as well. And while development may have started in Korea, Roku employees in NDCA (from Gracenote and Nielsen) have been involved in developing the technology for years. Importantly, "[t]he transfer analysis is *relative*." *In re Clarke*, 94 F.4th 502, 512 (5th Cir. 2024). NDCA has a local interest and WDTX does not. Thus, this factor strongly favors transfer. *See, e.g., Umbra Techs.*, 2024 WL 1123592, at *5 (local interest strongly favored transfer where defendant was headquartered in NDCA, accused technologies "were mainly designed and developed in the NDCA or abroad," and plaintiff had no connection to WDTX).

**5.    AMRH's attempts to discredit Roku are unfounded.**

AMRH attempts to distract from the transfer analysis by insinuating that Roku misled the Court when the record reflects no such thing. Roku's representation that it cannot identify which customers use its advertising products based on ACR data is uncontradicted by testimony. Ms. Debelair explained Roku can create "audience segments" that *may* rely on ACR data, but there is no evidence that Roku tracks when advertisers made such a request. ECF No. 56-1 at 23:3–13. She explained that Research Insights also "might or might not" use ACR, *id*. 47:9–23, 51:1–5, so a list of customers receiving that report would not show who used a product that relied on ACR. In either case, there is no evidence that Roku tracks the requested customer data in the ordinary course of business. AMRH also asserts inconsistency between the statement that Roku's Cardiff employees now work on applications that "do not implicate ACR in any way" and the fact that one edited ACR source code on or after January 1, 2023. But there is no inconsistency because it was not until sometime in January 2023 that the Cardiff team stopped work on the DLA application. McKeever Ex. R (Cormie Tr.) at 67:5–8.

Dated: June 14, 2024

Respectfully submitted,

**PERKINS COIE LLP**

*/s/ Patrick J. McKeever*

Matthew C. Bernstein, CA Bar No. 199240
MBernstein@perkinscoie.com
Patrick J. McKeever (*Pro Hac Vice*)
PMcKeever@perkinscoie.com
Ji Wang, CA Bar No. 345211
JiWang@perkinscoie.com
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Tel. (858) 720-5700

Martin E. Gilmore (*Pro Hac Vice to be submitted*)
MGilmore@perkinscoie.com
Rachel Dalafave (*Pro Hac Vice to be submitted*)
RDalafave@perkinscoie.com
405 Colorado Street, Suite 1700
Austin, TX 78701
Tel. (737) 256-6100

Theresa H. Nguyen, CA Bar No. 284581
RNguyen@perkinscoie.com
1201 Third Ave., Ste 4900
Seattle, WA 98101
Tel. (206) 359-8000

Maria A. Stubbings (*Pro Hac Vice*)
MStubbings@perkinscoie.com
700 13th St., NW, Suite 800
Washington, D.C. 20005
Tel. (202) 654-6200

*Attorneys for Defendant Roku, Inc.*

-12-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served upon all counsel of record, via the Court's CM/ECF system on June 14, 2024.

*/s/ Patrick J. McKeever*
Patrick J. McKeever